[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
APR 20, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-13698
Non-Argument Calendar

_____

Agency Nos. A95-905-539
A95-905-540

ROSA HELENA ARANGO-ECHEVERRI,
MANUEL ANTONIO OCAMPO-MUNOZ,
JUAN MANUEL OCAMPO-ARANGO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(April 20, 2007)**

Before BLACK, HULL and MARCUS, Circuit Judges.

PER CURIAM:

Upon sua sponte reconsideration of this appeal, we vacate our previous

opinion and substitute the following opinion in its place.

Rosa Helena Arango Echeverri, proceeding pro se, petitions this Court for review of the Board of Immigration Appeals' ("BIA") final order adopting and affirming the Immigration Judge's ("IJ") denial of asylum and withholding of removal under the Immigration and Nationality Act ("INA"), 8 U.S.C. §§ 1158, 1231, and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman and Degrading Treatment or Punishment ("CAT"), 8 C.F.R. § 208.16(c).[1]  After review, we deny the petition for review.

## I. BACKGROUND

Arango Echeverri, a native and citizen of Colombia, was admitted into the United States on April 24, 2002, as a non-immigrant visitor authorized to stay until October 23, 2002.  Once in the United States, Arango Echeverri filed an application for asylum and withholding of removal, claiming persecution based on her political opinion and membership in a particular social group.  The former Immigration and Naturalization Service ("INS") issued a notice to appear, charging Arango Echeverri with removability, pursuant to INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for overstaying her visa.  Arango Echeverri conceded removability.

According to Arango Echeverri's asylum application and her hearing

---

[1]Arango Echeverri's asylum application listed her husband, Manuel Antonio Ocampo Munoz, and her son, Juan Manuel Ocampo Arango, as derivative applicants.  Because Arango Echeverri is the lead petitioner, we refer only to her.

testimony, Arango Echeverri had been a member of the Conservative Party in Colombia since 1992. As a member of the Conservative Party, Arango Echeverri participated in election and human rights campaigns, including traveling to poor areas of Colombia with the health and education brigades. According to Arango Echeverri, the main purpose of her travels was to encourage peasants to register with the Conservative Party and vote for Conservative Party candidates. Arango Echeverri also discouraged them from becoming involved with guerrilla groups in Colombia, such as the Revolutionary Armed Forces of Colombia ("FARC").

According to Arango Echeverri, the FARC became aware of her activities and began calling her and threatening to kill her unless she stopped. Arango Echeverri received her first threatening telephone call in October 1994. She reported this call to the police, but did not report that the call was from the FARC. Arango Echeverri received approximately thirteen additional threatening calls over the next eight years. Although she was scared, she continued to work with the Conservative Party.

Arango Echeverri's brother-in-law and two nephews were also involved with the Conservative Party. In November 1995, Arango Echeverri's nephews were kidnapped by the FARC and never seen again. The FARC murdered Arango Echeverri's brother-in-law in December 1995 after he began looking for his sons.

In September 2001, Arango Echeverri strengthened her Conservative Party

literacy campaign and began talking out against guerilla groups to young people the FARC was trying to recruit. On April 10, 2002, Arango Echeverri received a phone call from the FARC. In the call, the FARC threatened to kill Arango Echeverri unless she stopped her activities and stated that they had already located her. On April 13, Arango Echeverri found on her doorstep a funeral wreath with a sympathy card, offering condolences on her death. Arango Echeverri abandoned her home and sent her son to her in-law's home, while she stayed with a friend. Arango Echeverri and her son fled Colombia on April 24, 2002.

During the hearing, Arango Echeverri testified that her husband had entered the United States in 1999 because he had problems with Arango Echeverri's participation in the Conservative Party and they had argued frequently.

Arango Echeverri also admitted that she had been to the United States three times before she came in 2002 to apply for asylum. These visits occurred after Arango Echeverri began receiving threatening phone calls and after her nephews had been kidnapped and her brother-in-law had been killed. Arango Echeverri did not apply for asylum during any of these earlier visits. Arango Echeverri stated that she decided to leave Colombia and seek asylum in April 2002 because she believed the level of the threat had increased when the FARC sent her the wreath.

In an oral decision, the IJ denied all requested relief. The IJ found Arango Echeverri ineligible for asylum or withholding because she had failed to show

4

either past persecution or a well-founded fear of future persecution. The IJ specifically concluded that the death threats and condolence wreath did not rise to the level of persecution. The IJ also noted that he considered it significant that Arango Echeverri had not sought asylum during her earlier visits to the United States even though (1) the visits occurred after Arango Echeverri had received most of the threats, her nephews had been kidnapped and her brother-in-law had been murdered; and (2) her husband was already in the United States.

Arango Echeverri appealed to the BIA. The BIA adopted and affirmed the IJ's decision. The BIA noted that it affirmed the IJ's decision "especially given the lead respondent's three trips to the United States before finally filing for asylum in 2002." Arango Echeverria filed this petition for review.

## II. DISCUSSION

### A. Asylum

An alien who arrives in or is present in the United States may apply for asylum. See 8 U.S.C. § 1158(a)(1). The Attorney General has discretion to grant asylum if the alien meets the INA's definition of a "refugee." See 8 U.S.C. § 1158(b)(1). A "refugee" is

> any person who is outside any country of such person's nationality . . . and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or

political opinion . . . .

8 U.S.C. § 1101(a)(42)(A). The asylum applicant carries the burden of proving statutory "refugee" status. See Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001).

To carry this burden of proving statutory "refugee" status, the alien must, with specific and credible evidence, establish either (1) past persecution on account of a statutorily listed factor, or (2) a "well-founded fear" that the statutorily listed factor will cause future persecution. 8 C.F.R. § 208.13(a), (b); Al Najjar, 257 F.3d at 1287. In order to be well-founded, a fear of persecution must be both "subjectively genuine and objectively reasonable." Al Najjar, 257 F.3d at 1289. A finding of past persecution creates a presumption of a well-founded fear of future persecution and shifts the burden to the government to demonstrate that either conditions have changed in the alien's home country, or the alien could avoid such persecution by relocating in the home country and that relocation is reasonable. 8 C.F.R. § 208.13(b)(1).

**B.    Arango Echeverri's Claim**

After reviewing the record as a whole, we conclude that the IJ's denial of Arango Echeverri's asylum application is supported by substantial evidence.[2] With

---

[2]Where, as here, the BIA expressly adopts the IJ's decision, we review both the BIA and the IJ's rulings. Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). To the extent the BIA's and the IJ's decision rests on a legal conclusion, or review is de novo. Mohammed v.

regard to past persecution, the FARC's telephone threats and the funeral wreath placed on Arango Echeverri's doorstep do not rise to the level of persecution. This Court has held that harassment, such as threats and acts of intimidation, without any physical harm, do not rise to the level of persecution. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1231 (11th Cir. 2005) (concluding that three phone calls with death threats to Sepulveda and an in-person threat to a family member did not amount to past persecution and noting that the bombing of the mailbox placed by Sepulveda's political group at the restaurant where Sepulveda worked did not compel the conclusion that the bombing was directed at her on account of her political activities); see also Zheng v. U.S. Att'y Gen., 451 F.3d 1287, 1290-91 (11th Cir. 2007) (concluding that "Zheng's five-day detention during which he was not harmed does not compel the conclusion that he experienced past persecution").

Because the FARC's harassment of Arango Echeverri does not amount to past persecution, Arango Echeverri is not entitled to a presumption of a well-founded fear of future persecution. Nor does the record compel the conclusion that there is a reasonable possibility that Arango Echeverri personally will suffer

_____

Ashcroft, 261 F.3d 1244, 1247-48 (11th Cir. 2001). We review a factual determination that an alien is statutorily ineligible for asylum or withholding of removal under the substantial evidence test. Al Najjar, 257 F.3d at 1283-84. Under the substantial evidence test, "we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003). The fact that evidence in the record may support a contrary conclusion does not warrant reversal. Adefemi v. Ashcroft, 386 F.3d 1022, 1027 (11th Cir. 2004) (en banc).

persecution if she returns to Colombia.[3] Even assuming Arango Echeverri's fear of future persecution is subjectively genuine, there is substantial evidence to support the finding that it is not objectively reasonable given that Arango Echeverri was never physically harmed.[4] Although Arango Echeverri emphasizes that the FARC kidnapped her nephews and murdered her brother-in-law, these events occurred in 1995. Arango Echeverri remained in Colombia for another seven years, and there is no evidence that the FARC harmed or attempted to harm her physically during that time. Additionally, Arango Echeverri has relatives who have continued to live in Colombia unharmed. Furthermore, Arango Echeverri has not presented evidence suggesting that the FARC continues to be interested in her.

Given that Arango Echeverri failed to carry her lower burden of proof with regard to asylum, she is also ineligible for withholding of removal. See Forgue v. U.S. Att'y Gen., 401 F.3d 1282, 1288 n.4 (11th Cir. 2005).[5]

**PETITION DENIED.**

---

[3]Because substantial evidence supports the finding that Arango Echeverri does not face a reasonable possibility of personal persecution, we do not address her arguments regarding whether she showed she could avoid persecution by relocating within Colombia. See 8 C.F.R. § 208.13(b)(2).

[4]There is also substantial evidence to suggest that Arango Echeverri's subjective fear was not genuine given that Arango Echeverri only sought asylum on her fourth trip to the United States and her three previous trips had occurred after she began receiving telephone threats, her nephews had been kidnapped and her brother-in-law had been killed.

[5]On appeal, Arango Echeverri does not raise any challenge to the denial of CAT relief and has abandoned this issue. See Sepulveda, 401 F.3d at 1228 n.2.